1  McDONOUGH HOLLAND & ALLEN PC
   Attorneys at Law
2  JULIE A. RANEY (SBN 176060)
   KARA K. UEDA (SBN 210044)
3  KIMBERLY E. HOOD (SBN 229195)
   500 Capitol Mall, 18th Floor
4  Sacramento, CA  95814
   Phone: 916.444.3900
5  Fax:    916.444.8334

6  Attorneys for Petitioner/Plaintiff Daniel D. Claxton

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12  DANIEL D. CLAXTON,                          )  Case No. 2:08-CV-01058-MCE-EFB
                                                )
13          Petitioner/Plaintiff,              )  **OPENING BRIEF IN SUPPORT OF**
                                                )  **PETITIONER/PLAINTIFF'S**
14                                              )  **PETITION FOR WRIT OF MANDATE**
       v.                                       )
15                                              )
                                                )  Petition/Complaint Filed 04/15/08
16  COUNTY OF COLUSA; the BOARD OF             )  in Colusa County Superior Court
    SUPERVISORS OF THE COUNTY OF               )  Case No. CV 23572 (Hon. William Abel)
17  COLUSA; STEPHEN HACKNEY in his             )
    official capacity; and DOES 1-100, inclusive, )  Notice of Removal filed 05/13/08
18                                              )
                                                )  Date:    November 18, 2009
19          Respondents/Defendants.            )  Time:    2:00 p.m.
                                                )  Judge:  Hon. Morrison C. England, Jr.
20  _____ )

21

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///


McDonough Holland & Allen PC
Attorneys at Law

Petitioner's Opening Brief

# TABLE OF CONTENTS

**Pages**

I.  INTRODUCTION .................................................................................................1

II.  SUMMARY OF ARGUMENT .............................................................................1

III.  OVERVIEW OF CALIFORNIA LAND USE LAWS ...........................................2

    A.  General Plan Law ........................................................................................2

    B.  Zoning Law .................................................................................................3

    C.  Subdivision Map Act ..................................................................................3

    D.  Permit Streamlining Act .............................................................................4

IV.  STATEMENT OF FACTS ....................................................................................5

V.  PROCEDURAL HISTORY ...................................................................................9

VI.  STANDARD OF REVIEW ...................................................................................9

VII.  ARGUMENT .....................................................................................................10

    A   Colusa County Denied Claxton a Fair Hearing .........................................10

    B.  The County Committed a Prejudicial Abuse of Discretion .....................13

        1.  The County Did Not Comply with the Permit Streamlining Act...............................................................................................13

        2.  The County's Adoption of Resolution No. 07-010 was an Unlawful "Interpretation" of its General Plan and Effectively a General Plan Amendment ....................................16

    C.  The County Abused Its Discretion in Adopting Findings That Were Not Supported by Substantial Evidence.......................................17

        1.  The Requirement for Findings.................................................17

        2.  None of the County's Four Findings Were Supported by Substantial Evidence ...............................................................18

VIII. CONCLUSION....................................................................................................20

MHA
McDonough Holland & Allen PC
Attorneys at Law

# TABLE OF AUTHORITIES

**Pages**

## Cases

*American Funeral Concepts-American Cremation Soc'y v.*
*Board of Funeral Directors & Embalmers*
   136 Cal. App. 3d 303 (1982) ........................................................................18

*Applebaum v. Board of Directors*
   104 Cal. App. 3d 648 (1980) ........................................................................10

*Arnel Development Co. v. City of Costa Mesa*
   126 Cal. App. 3d 330 (1981) ..................................................................11, 20

*Bickel v. City of Piedmont*
   16 Cal. 4th 1040 (1997) ..................................................................................4

*California Youth Authority v. State Personnel Bd.*
   104 Cal. App. 4th 575 (2002) ......................................................................18

*City of Fairfield v. Superior Court*
   14 Cal. 3d 768 (1975) ............................................................................10, 11

*City of Walnut Creek v. County of Contra Costa*
   101 Cal. App. 3d 1012 (1980) ................................................................16, 18

*Clark v. City of Hermosa Beach*
   48 Cal. App. 4th 1152 (1996) ................................................................10, 12

*Conlan v. Bonta*
   102 Cal. App. 4th 745 (2002) ......................................................................10

*DeVita v. County of Napa*
   9 Cal. 4th 763 (1995) ....................................................................................2

*Families Unafraid to Uphold Rural El Dorado County v. County of El Dorado*
   62 Cal. App. 4th 1332 (1998) ......................................................................16

*Friends of Old Trees v. Department of Forestry & Fire Protection*
   52 Cal. App. 4th 1383 (1997) ......................................................................10

*Horn v. County of Ventura*
   24 Cal. 3d 605 (1979) ..................................................................................10

*Kalway v. City of Berkley*
   151 Cal. App. 4th 827 (2007) ......................................................................10



McDonough Holland & Allen PC
Attorneys at Law

*Land Waste Management v. Contra Costa County*
222 Cal. App. 3d 950 (1990) .......................................................................4

*Lesher Communications, Inc. v. City of Walnut Creek*
52 Cal. 3d 531 (1990) ................................................................................3

*Merritt v. City of Pleasanton*
89 Cal. App 4th 1032 (2001) .....................................................................2

*O'Loane v. Rourke*
231 Cal. App. 2d 774 (1965) .....................................................................3

*Orsi v. City Council of the City of Salinas*
219 Cal. App. 3d 1576 (1990) ...................................................................4

*Saad v. City of Berkeley*
24 Cal. App. 4th 1206 (1994) ..................................................................18

*Sequoyah Hills Homeowners Assn. v. City of Oakland*
23 Cal. App. 4th 704 (1993) ....................................................................13

*Topanga Ass'n for a Scenic Community v. County of Los Angeles*
11 Cal. 3d 506 (1974) ..............................................................................18

*Usher v. County of Monterey*
65 Cal. App. 4th 210 (1998) ....................................................................18

*Vollstedt v. City of Stockton*
220 Cal. App. 3d 265 (1990) ....................................................................10

*Wilkins v. City of San Bernardino*
29 Cal. 2d 332 (1946) ..............................................................................11

*Witt Home Ranch v. County of Sonoma*
165 Cal. App. 4th 543 (2008) .....................................................................3

*Young v. Gannon*
97 Cal. App. 4th 209 (2002) ....................................................................18

*Youngblood v. Board of Supervisors*
22 Cal. 3d 644 (1978) ................................................................................4

**Federal Cases**

*Kay v. City of Rancho Palos Verdes*
504 F.3d 803 (9th Cir. 2007) ...................................................................10



McDonough Holland & Allen PC
Attorneys at Law

1

<u>**California Statutes**</u>

2

Code of Civil Procedure

3

    Section 1094.5................................................................1, 9, 10, 18, 20

4

Government Code

5

    Sections 65090-65091.....................................................................6
    Section 65302................................................................................2
    Section 65350................................................................................3
    Section 65353................................................................................3
    Section 65354................................................................................3
    Section 65356................................................................................3
    Sections 65853-65857.....................................................................3
    Section 65358................................................................................3
    Section 65920................................................................................4
    Section 65921................................................................................4
    Section 65927-65928 ......................................................................4
    Section 65943................................................................................4
    Section 65944................................................................5, 13, 15
    Sections 66410-66499.37..................................................................3
    Section 66424................................................................3, 17
    Section 66424.5..............................................................................3
    Section 66426................................................................................3
    Section 66451.3..............................................................................6
    Section 66473................................................................................4
    Section 66474.2..............................................................5, 15

17

<u>**Federal Statutes**</u>

18

28 U.S.C. Section 1441(b).....................................................................9

19

42 U.S.C. Section 1983.........................................................................9

20

<u>**Other**</u>

21

Colusa County Code Appendix XIV § 2.15 ..........................................17

22

23

24

25

26

27

28



1   Petitioner/Plaintiff Daniel D. Claxton submits this Opening Brief following removal by

2   Respondent/Defendant Colusa County and the parties' stipulation to bifurcate the case and have the

3   writ considered first. Claxton respectfully submits this Opening Brief in support of his petition for a

4   peremptory writ of mandate pursuant to California Code of Civil Procedure section 1094.5.

5   ### I.   INTRODUCTION

6   This case is about Colusa County's unfair and unlawful treatment of an out-of-town property

7   owner. The property owner, Daniel Claxton, sought to divide 420 acres of farmland into several

8   smaller legal parcels for long-term estate planning purposes. His application would have resulted in

9   smaller parcels but would not have resulted in a change in the agricultural use. However, the County

10  had a mistaken and unsubstantiated belief that Claxton would use the property for a "non-

11  agricultural" use, though he sought no land use approvals (such as a zoning change or use permit) to

12  change the use. The only uses that would continue to be permitted after the subdivision were those

13  "appurtenant" to a principal agricultural use. Even single-family dwellings not "appurtenant" to a

14  principal agricultural use require a use permit. AR 2:63:513.[1]

15  As explained below, the County's erroneous assumption about the "non-agricultural" use of

16  Claxton's property drove the County to improperly delay processing his application so it could drum

17  up reasons to deny the application as inconsistent with the County's General Plan. In doing so, the

18  County denied Claxton a fair hearing and prejudicially abused its discretion.

19  ### II.   SUMMARY OF ARGUMENT

20  First, the County's animosity towards Claxton caused the County to treat Claxton's property

21  differently from other property owners who requested similar subdivisions and to adopt a resolution

22  in the midst of processing Claxton's application that made it possible for the County to deny the

23  application. Claxton did not receive a fair hearing from the County, and a writ of mandamus must

24  issue pursuant to Code of Civil Procedure section 1094.5.

25  Second, the County prejudicially abused its discretion by not proceeding in the manner

26  required by law. Specifically, the County (a) unlawfully delayed processing Claxton's application,

27  (b) unlawfully amended its General Plan without complying with the amendment procedures, and

28

---

[1] The term "AR" refers to the Administrative Record lodged with this Court by the County on May 29, 2009. The numbers following "AR" refer to the volume, tab, and page number of the Administrative Record.



1  (c) adopted findings that were not supported by substantial evidence.

2       The County's main reason for denying Claxton's application was a purported inconsistency

3  with the General Plan. But on the date of submission, the application was consistent with the General

4  Plan. To buy itself time to deem it <u>inconsistent</u> with the General Plan, the County delayed

5  determining that Claxton's application was complete. During that time, the County Board of

6  Supervisors adopted a resolution finding that subdivisions such as Claxton's would effectively be

7  prohibited under the General Plan. The critical issue was whether Claxton's subdivision would result

8  in "non-agricultural" parcels, as the General Plan cautioned against subdivision into ten-acre non-

9  agricultural parcels. Claxton's application made clear that he would continue farming the property,

10  and he did not propose any new uses. The resolution, however, "deemed" Claxton's proposed

11  subdivision "non-agricultural," despite the property's actual or intended use. The resolution did not

12  merely "interpret" the General Plan. The County effectively amended its General Plan without

13  complying with the statutory procedures for amending a general plan.

14       Finally, the County adopted four findings when it denied Claxton's application, none of

15  which were supported by evidence, much less substantial evidence. The findings all centered around

16  General Plan consistency and the unsubstantiated threat of "non-farming families."

17  **III.     OVERVIEW OF CALIFORNIA'S LAND USE LAWS**

18       This section provides a brief overview of California's general plan law, zoning law, the

19  Subdivision Map Act, and the Permit Streamlining Act.

20  **A.     General Plan Law**

21       A city or county's general plan is considered its "constitution" for all land use planning

22  within its jurisdiction. *Lesher Communications, Inc. v. City of Walnut Creek*, 52 Cal. 3d 531, 540

23  (1990). It has seven mandatory elements: land use, circulation, housing, conservation, open space,

24  noise, and safety. Gov't Code § 65302. All actions taken by a city or county must be consistent with

25  its general plan. *DeVita v. County of Napa*, 9 Cal. 4th 763, 772 (1995); *Merritt v. City of Pleasanton,*

26  89 Cal. App 4th 1032, 1036 (2001) (zoning decision "must be consistent with the relevant general

27  plan, and if it is not consistent with the general plan, it is invalid when passed").

28       By statute, mandatory elements of a general plan may only be amended four times within one



Petitioner's Opening Brief                                                         1206495v5 36581/0001

1   year. Gov't Code § 65358(b). The procedures for amending a general plan are set forth in

2   Government Code section 65350 *et seq.* The planning commission must first hold at least one

3   noticed public hearing and make a written recommendation to the board of supervisors. §§ 65353(a),

4   65354. The board of supervisors, after receiving the commission's recommendation, must also hold

5   at least one public hearing. § 65356. If the board makes any substantial modifications, it must refer

6   the matter back to the planning commission for its recommendation. *Id.*

7   **B.**    **Zoning Law**

8         An agency's zoning code regulates both the uses to which buildings within certain zoning

9   districts may be put and the structural aspects (such as height and setbacks) of those buildings.

10   *O'Loane v. Rourke*, 231 Cal. App. 2d 774, 780 (1965). For example, a zoning code may permit

11   single- and multi-family housing in its residential districts but only allow a retail use with a use

12   permit, which may or may not be granted by the agency or may be granted with various conditions.

13   Changing a property's zoning requires amending the zoning ordinance, which is approved by a city

14   council or board of supervisors following a public hearing. Gov't Code §§ 65853-65857.

15   **C.**    **Subdivision Map Act**

16         The Subdivision Map Act (SMA) (Gov't Code §§ 66410-66499.37) requires a landowner

17   who wants to divide a single parcel of land into smaller parcels to obtain the local agency's approval

18   before doing so. *Witt Home Ranch v. County of Sonoma,* 165 Cal. App. 4th 543, 551 (2008). A

19   subdivision is the "division, by any subdivider, of any unit or units or improved or unimproved land,

20   or any portion thereof, shown on the latest equalized county assessment roll as a unit or as

21   contiguous units, for the purpose of sale, lease, or financing, whether immediate or future." § 66424.

22         The SMA requires a landowner proposing to subdivide property to obtain city or county

23   approval of a "final map" or a "parcel map." Generally, a final map is required for a subdivision of

24   five or more parcels. A parcel map is required for all other subdivisions. For final maps, the SMA

25   requires a two-step process where the local agency first approves a tentative map and then approves

26   a final map. Gov't Code §§ 66424, 66426. A tentative map shows the proposed subdivision's design

27   and improvement and existing conditions in and around it. § 66424.5(a). Before obtaining a final

28   map, an applicant must have a tentative map. An agency may place conditions on the tentative map



McDonough Holland & Allen PC
Attorneys at Law

Petitioner's Opening Brief                        1206495v5 36581/0001

1   (such as requiring a housing developer to dedicate certain streets or obtain a will-serve letter from

2   the water district), which must be satisfied before the agency issues the final map. § 66473. If the

3   tentative map conditions are satisfied, the agency generally must approve the final map, as it is a

4   ministerial act. *Youngblood v. Board of Supervisors*, 22 Cal. 3d 644, 656 (1978).

5   **D.      Permit Streamlining Act**

6          The Permit Streamlining Act (PSA) (Gov't Code §§ 65920 *et seq.*) was enacted in 1977 to

7   "relieve applicants from protracted and unjustified governmental delays in processing their permit

8   applications." *Bickel v. City of Piedmont*, 16 Cal. 4th 1040, 1046 (1997) (superseded by statute on

9   other grounds). The Legislature found a "need to ensure clear understanding of the specific

10  requirements which must be met in connection with the approval of development projects and to

11  expedite decisions on such projects." § 65921. The PSA applies to "development projects," including

12  projects proposing to change "the density or intensity of use of land," including subdivisions

13  pursuant to the Subdivision Map Act. §§ 65927-65928. It applies only to adjudicatory acts and not to

14  legislative acts or to legislative acts triggered by an adjudicatory act (such as a subdivision

15  application that requires a general plan amendment, which is a legislative act). *Land Waste

16  Management v. Contra Costa County*, 222 Cal. App. 3d 950, 960-961 (1990). Thus, projects

17  involving only adjudicatory action by the public agency, such as a subdivision map application, are

18  subject to the PSA.

19         Section 65943(a) requires public agencies to determine the completeness of a development

20  application within thirty days of receipt. If no determination is made within thirty days, the

21  application is deemed complete as a matter of law. *Orsi v. City Council of the City of Salinas*, 219

22  Cal. App. 3d 1576, 1583 (1990). If the agency determines that the application is incomplete, it must

23  describe the incomplete parts and indicate the manner in which they may be made complete,

24  including "a list and thorough description of the specific information needed to complete the

25  application." § 65943(a). The applicant then must submit the requested materials to the agency. *Id.*

26  The agency then has thirty days to make another written completeness determination. § 65943(b).

27         Once an application is complete, the agency may not request new or additional information

28  but may request the applicant to "clarify, amplify, correct, or otherwise supplement the information


MHA
McDonough Holland & Allen PC
Attorneys at Law

1  required for the application." § 65944(a). The day the application is complete is important because,

2  with certain exceptions not applicable here, an agency when approving or disapproving a tentative

3  subdivision map may only apply the ordinances, policies, and standards that were in effect at the

4  time the application was determined to be complete. Gov't Code § 66474.2. Thus, if a public agency

5  changes its general plan or zoning ordinance <u>after</u> the day an application has been deemed complete,

6  the amended general plan or zoning ordinance would not apply to the application.

7  ### IV.    STATEMENT OF FACTS

8      Daniel Claxton is a Southern California resident and the authorized agent for the Claxton

9  Family Trust, which owns approximately 420 acres of land in the southern portion of Colusa

10  County, near Arbuckle. The property is divided into 20- and 40- acre parcels and consists of almond

11  orchards. It is zoned Exclusive Agriculture (E-A) and designated Agriculture General (A-G) in the

12  County's General Plan. When Claxton submitted his application, both the zoning and General Plan

13  permitted ten-acre parcels. AR 1:14:88. While the General Plan stated that "[s]ubdivisions of farms

14  into 10-acre non-agricultural parcels should be strictly prohibited"(AR 2:62:503), it had no similar

15  caution for the subdivision of <u>agricultural parcels</u>.

16      The County previously approved the subdivision of agricultural ten-acre parcels both by

17  parcel and final maps, including property adjacent to Claxton's property. Thus, Claxton reasonably

18  assumed he would be permitted to subdivide his property. *See* AR 2:53:426 (Planning Director

19  discussing "all the ten-acre parceling that's gone in the south County"); AR 1:3:17 (depicting smaller

20  parcels adjacent to Claxton's property); AR 1:24:178-179 (Planning Commission approval of

21  division into three 11.5-acre parcels and one approximately 20-acre parcel); AR 2:53:431 (Hackney

22  referencing Mezger/Charter subdivision approval). And the County had no specific standards or

23  prohibitions for ten-acre parcels and declined to adopt any. AR 1:24:179 (Planning Commissioner

24  noted Board did not act on recommendation of committee regarding 10-acre minimums; AR

25  1:22:134 (letter from Colusa County Resource Conservation District, "The CCRCD is very

26  concerned about the large volume of ten acre parcel splits being approved for property zoned EA.").

27      Claxton filed a tentative subdivision map application on January 10, 2007, seeking to

28  subdivide the property into 37 agricultural parcels of approximately 10n acres, one 26-acre parcel,


**MHA**
McDonough Holland & Allen PC
Attorneys at Law

Petitioner's Opening Brief                                                        1206495v5 36581/0001

1   and one parcel of a little over 16 acres. AR 1:3:4-52. The subdivision would allow his mother to

2   distribute the farm to family members so that they could continue farming. AR 2:52:390. Claxton

3   also found it would be easier to obtain financing for smaller parcels. *Id.* Claxton did not propose any

4   development, as the existing orchard would be farmed together. AR 1:3:7-8.

5        The County had thirty days (until February 9, 2007) to determine if Claxton's application was

6   complete. AR 1:3:11. Claxton received a letter dated January 29, 2007 from Stephen Hackney, the

7   County Planning Director, informing him that the Board of Supervisors would consider on February

8   6 "whether it is appropriate" to process subdivision maps for lands designated A-G and that

9   Claxton's application would be an example "for point of discussion." AR 1:4:53. The item was

10  placed on the agenda as "Discussion/Direction and possible action regarding Subdivision (Final

11  Map) land divisions in an E-A (Exclusive Agriculture) zone in relation to language found in the

12  General Plan Land Use designation A-G (Agriculture General)." AR 2:54:448. During the meeting,

13  Hackney put a map of Claxton's property on an easel, with Claxton's parcels outlined in red, and

14  declared it a "poster child" for the discussion. AR 1:8:63[2]. Claxton objected to the Board of

15  Supervisors using his map as an example and also objected to not receiving proper ten-day notice, as

16  the Board was effectively holding a public hearing on his tentative map. AR 2:55:451; Gov't Code

17  §§ 65090-65091; 66451.3. The Board tabled the item until February 20, 2007. AR 2:55:451.

18       On February 6 and 7th, the County appointed five new members of the Planning

19  Commission. AR 2:64:515-534. On February 9, Hackney informed Claxton by letter that his

20  application was incomplete. AR 1:5:54-55. Hackney claimed to not understand, among other things,

21  what "long term estate planning" meant. Each purported incompleteness reason centered around the

22  misplaced belief that Claxton would stop farming. Even though Claxton stated he would continue

23  farming and attested that to be a true and correct statement on the subdivision application (AR

24  1:3:9), Hackney told the Board that Claxton said he did not intend to farm.[3]  AR 1:5:55. Because of

25  this incorrect assumption, and even though Claxton did not propose to change either the zoning from

---

27  [2] Unfortunately, the County does not have a usable tape recording of this meeting, and the minutes for the meeting are quite abbreviated. AR 2:55:451.

28  [3] There is a disagreement between Claxton and Hackney concerning a conversation in Hackney's office in September 2006. Hackney claims that Claxton told him that he did not intend to farm the land while Claxton claims that he never told him such a thing. *See* AR 1:25:196.



Petitioner's Opening Brief                                                           1206495v5 36581/0001

1    Exclusive Agriculture or the use, Claxton was asked to explain how or why the subdivision would

2    not change the pattern, scale, or character of the general area of the project and why the project

3    would not result in a substantial change in demand for municipal services. AR 1:5:55.

4        On February 20, 2007, the Board of Supervisors again discussed the subdivision of lands

5    designated A-G, this time under the agenda description "Consider adopting a Resolution of the

6    County of Colusa Board of Supervisors Affirming the Current Language in The General Plan Land

7    Use Designation <u>Agriculture-General</u> (A-G) That Subdivision Of Agricultural Lands Into Non-

8    Agricultural Parcels shall Be Discouraged and authorize the Chairman to sign." AR 2:56:455. The

9    Board of Supervisors adopted Resolution No. 07-010, which provides that any subdivision

10    application requesting the subdivision of five or more parcels less than 20 acres in size are "deemed"

11    to be non-agricultural parcels, regardless of the parcel's use or zoning, and effectively enacted a de

12    facto moratorium against these types of subdivisions. AR 1:14:89-90; AR 2:57:462-463. Under the

13    Resolution, subdivisions of four parcels or fewer are "consistent with the General Plan" so long as

14    they satisfy the current zoning code and do not violate any General Plan policy intended to "foster

15    production agriculture in Colusa County [sic]." *Id.*

16        While the General Plan states that the division of ten-acre non-agricultural parcels should be

17    prohibited, it does not state that a subdivision of five or more parcels of twenty acres or less is

18    considered "non-agricultural." By adopting the Resolution, the County unlawfully amended its

19    General Plan by prohibiting the subdivision of land into five or more parcels of twenty acres or less.

20    By deeming such subdivisions "non-agricultural," they fell under the language stating that a

21    subdivision of farms into ten-acre non-agricultural parcels "should be strictly prohibited." Without

22    following any of the procedures for amending its General Plan, the Board changed lands being

23    farmed to "non-agricultural parcels" if proposed to be divided into five or more parcels of twenty

24    acres or less – despite their use or zoning.

25        Hackney's pretense in finding Claxton's application incomplete was borne out by his

26    subsequent letter of June 5, 2007 informing Claxton, quite surprisingly, that his application was

27    complete, even though Claxton never submitted new information. AR 1:9:65. The relevant

28    correspondence reveals that the County delayed finding the application complete to buy time to


McDonough Holland & Allen PC
Attorneys at Law

7

      1206495v5 36581/0001

1   devise a method for denying Claxton's application. Upon being pressed by Claxton to provide

2   examples as to why the application was incomplete, Hackney was forced to concede that his

3   application was complete. *See* AR 1:8:63-64 and 1:9:65.

4         The newly constituted Planning Commission considered Claxton's application on

5   September 10, 2007. County staff recommended denial based on General Plan inconsistency,

6   primarily because of the February 20 Resolution interpreting the General Plan provision about

7   subdivision of farms into ten-acre non-agricultural parcels being strictly prohibited. AR 1:14:75-77

8   (staff report from August 6, 2007 Planning Commission meeting, as the item was continued from

9   August 6 until September 10 (AR 1:18:113)). Staff recommended findings, which were not based on

10  evidence, including that the subdivision "may result in nonfarming families moving into agricultural

11  areas bringing urban uses and expectations into a rural environment." AR 1:14:78-80. Claxton

12  requested approval, as the subdivision was consistent with the General Plan and the Zoning Code,

13  and Claxton did not propose to subdivide non-agricultural parcels. AR 1:23:136-162.[4]  Neither was

14  Claxton seeking either a change in the general plan designation or a change to the zoning. Even if he

15  wanted to change the use, he would need a zoning change or use permit. AR 2:63:513 (Zoning Code

16  only permitted agricultural uses and structures appurtenant to principal agricultural uses). The

17  Commission voted 5-0 to deny the application. AR 1:25:197.

18        Claxton appealed the decision to the Board of Supervisors. AR 1:28:201. The Board hearing

19  of December 11, 2007 was continued to January 22, 2008, to allow the parties time to work on an

20  agreement. AR 2:45:369-370. Claxton tried to reach an agreement whereby the subdivision would

21  occur in four phases, each of which would be conditioned on his completion of "substantial

22  investment toward long-term agricultural improvement." AR 2:52:390. Due to the short amount of

23  time between the meetings, an agreement could not be reached. AR 2:52:391. The Board heard the

24  appeal on January 22, 2008. Even though questions were asked about why subdividing property into

25  five parcels deems property non-agricultural but subdividing four parcels does not (a question not

26  answer by staff (AR 2:53:436-437) but should have been asked prior to Resolution No. 07-010's

27

28  _____

[4] While the minutes of the Planning Commission hearing are in the Administrative Record (AR 1:25:168-197), there are no transcripts, as the tape of the hearing is either lost (AR 2:44:346) or otherwise unusable (AR 1:33:211).


**MHA**
McDonough Holland & Allen PC
Attorneys at Law

1   adoption), the Board denied the application 5-0. AR 2:53:442-443.

2   With no evidence that Claxton would use his property for a non-agricultural use and with no
3   application for a use change, the Board made a number of findings about conversion of agricultural
4   property and the potential effects of a "nonagricultural subdivision." The County found that
5   "nonfarming families living in a nonagricultural subdivision in areas zoned Exclusive Agriculture
6   (E-A) may have conflicts with agricultural activities and neighboring farming operations" and that
7   the agricultural activities "may place the new residents in an unhealthy environment." AR 2:42:342.
8   The Board had no evidence that Claxton would stop farming, or that "nonfarming families" would
9   move to the property. In fact, the _only_ evidence the Board had on this issue supported the opposite
10  conclusion, as Claxton stated that the existing orchard would continue to be farmed together (AR
11  2:50:376), and the proposed use of the resulting parcels "is to remain agriculture." AR 1:3:8.

## V.   PROCEDURAL HISTORY

13  Having exhausted all administrative remedies, Claxton filed a petition for writ of mandate
14  pursuant to California Code of Civil Procedure section 1094.5 and a complaint for declaratory relief
15  and violations of equal protection and substantive due process on April 15, 2008. On April 22, 2008,
16  Claxton requested the County prepare the record of proceedings pursuant to section 1094.5.

17  The County filed its answer on May 9, 2008, and removed the action pursuant to 28 U.S.C.
18  section 1441(b) on May 13, 2008, as the case arises out of 42 U.S.C. section 1983 and the United
19  States Constitution. On February 10, 2009, the Court signed a stipulation and order bifurcating the
20  writ proceeding and amending the scheduling order (Doc. # 15). The stipulation and order set forth a
21  briefing schedule for the writ and stayed all action on the complaint (including discovery and
22  discovery-related proceedings). The parties submitted an amended stipulation to amend the briefing
23  schedule, signed by the Court on April 28, 2009 (Doc. # 18). This Court has supplemental
24  jurisdiction pursuant to 28 U.S.C. section 1367(a), as the claims brought pursuant to the writ are
25  related to the claims brought pursuant to 42 U.S.C. section 1983 and the United States Constitution.
26  The County lodged the certified Administrative Record on May 29, 2009.

## VI.   STANDARD OF REVIEW

28  Administrative mandate proceedings challenge an agency's adjudicatory action, where an


**McDonough Holland & Allen PC**
Attorneys at Law

9

1   agency has applied existing law to a given set of facts. Cal. Civ. Proc. Code § 1094.5; *Kay v. City of*

2   *Rancho Palos Verdes,* 504 F.3d 803, 809 (9th Cir. 2007) (writs of mandate inquire into the validity

3   of a final administrative order). A writ of administrative mandamus is available following an

4   agency's final action, where the decision results from a proceeding in which by law a hearing is

5   required to be given and evidence taken, and the agency is vested with discretion in the

6   determination of the facts. § 1094.5; *Conlan v. Bonta,* 102 Cal. App. 4th 745, 752 (2002).

7   "Mandamus is an equitable remedy." *Kalway v. City of Berkley,* 151 Cal. App. 4th 827, 835 (2007).

8   The inquiry in an administrative mandamus case involves considering: (1) whether the respondent

9   acted in excess of jurisdiction; (2) whether there was a fair trial; or (3) whether there was a

10  prejudicial abuse of discretion. § 1094.5(b). Consideration of a subdivision map is reviewable by

11  petition for writ of administrative mandate. *Horn v. County of Ventura,* 24 Cal. 3d 605, 614 (1979).

12          Colusa County denied Claxton a fair hearing. Colusa County prejudicially abused its

13  discretion by not proceeding in the manner required by law and by adopting findings that were not

14  supported by evidence, either one of which requires the Court to issue a writ of administrative

15  mandamus pursuant to Code of Civil Procedure section 1094.5(b).

16                              **VII.    ARGUMENT**

17  **A.      Colusa County Denied Claxton a Fair Hearing**

18          A writ is appropriate where the petitioner has been deprived of a fair trial. § 1094.5(b). An

19  actual "trial" is not required; a hearing where the agency must accept and consider evidence from

20  interested parties before making a decision is sufficient. *Friends of Old Trees v. Department of*

21  *Forestry & Fire Protection,* 52 Cal. App. 4th 1383, 1392 (1997) (hearing on timber harvest plan).

22  An individual subject to an adjudicatory proceeding has the right to a tribunal that meets "standards

23  of impartiality" with unbiased decision-makers. *Clark v. City of Hermosa Beach,* 48 Cal. App. 4th

24  1152, 1170 (1996) (quoting *Applebaum v. Board of Directors,* 104 Cal. App. 3d 648, 657-658

25  (1980)). The issue of whether a hearing was fair may include both pre-hearing and post-hearing

26  procedures. *Vollstedt v. City of Stockton,* 220 Cal. App. 3d 265, 269 (1990). Whether there was a fair

27  hearing is an issue of law reviewed de novo (*Clark v. City of Hermosa Beach,* at 1169-1170), and the

28  court renders its independent judgment on the basis of the administrative record. *City of Fairfield v.*


McDonough Holland & Allen PC
Attorneys at Law

Petitioner's Opening Brief                                    1206495v5 36581/0001

1 | *Superior Court*, 14 Cal. 3d 768, 776 (1975).

2 The County acted arbitrarily and discriminatorily in treating Claxton's application differently

3 from others. The record establishes that the County approved many parcels of ten or twenty acres.

4 *See e.g.* AR 1:24:178-179 (Planning Commission approval of division into three 11.5-acre parcels

5 and one approximately 20-acre parcel); AR 2:53:431 (discussion of Mezger/Charter subdivision

6 approval); AR 1:3:17 (depicting smaller parcels adjacent to Claxton's property); AR 1:22:134 (letter

7 from Colusa County Resource Conservation District, "The CCRCD is very concerned about the

8 large volume of ten acre parcel splits being approved for property zoned EA").

9 Upon receiving an application from San Diego County resident Dan Claxton, however, the

10 County decided it needed to examine the ten-acre parcel issue, even though it had previously

11 approved a number of other similar subdivisions. This type of unfair discrimination against a

12 particular piece of land is not permitted, and courts "may properly inquire as to whether the scheme

13 of classification has been applied fairly and impartially in each instance." *Arnel Development Co. v.*

14 *City of Costa Mesa*, 126 Cal. App. 3d 330, 336 (1981) (quoting *Wilkins v. City of San Bernardino*,

15 29 Cal. 2d 332, 338 (1946)). In *Arnel*, the City of Costa Mesa approved a final development plan and

16 a tentative map for 68 acres of land. The city also rezoned the property residential low- and medium-

17 density to permit the proposed development, which included moderate-income apartment units. But

18 a citizens' group succeeded in placing an initiative petition on the ballot to rezone Arnel's property as

19 single-family residential. The initiative passed, causing the city to refuse to approve a final

20 subdivision map or issue building permits. The court held that the voter-approved rezoning was

21 arbitrary and capricious because its obvious purpose was to prevent the proposed construction of the

22 apartments. The court stated that had the city council attempted to do what the initiative proponents

23 did – later rezone the property for the sole purpose of defeating the development - that action would

24 "undoubtedly be held invalid as arbitrary and discriminatory." *Id.* at 337.

25 The city in *Arnel* was prohibited from later rezoning a property for the sole purpose of

26 preventing a proposed development. Similarly, the County here should be prohibited from

27 "interpreting" its General Plan for the purpose of preventing the subdivision, especially when others

28 were approved. The differential treatment of Claxton's property was evident in the hearing before the



11

1206495v5 36581/0001

1    Board of Supervisors. Claxton told the Board he wanted to do the same thing as his neighbors had

2    done – divide his property into ten-acre parcels – but he could not figure out why the County

3    supported and approved those subdivisions but not his. AR 2:53:408-409. Hackney admitted that the

4    County approved other ten-acre parcel subdivisions and stated: "You know far better than I all the

5    ten-acre parceling that's gone in the south County. So Mr. Claxton point [sic] to those actions, all

6    those ten-acre parcels, and he does so correctly." AR 2:53:426 (emphasis added).

7        The biased hearing before the Board was tainted from the outset by its biased staff. In

8    response to Claxton's request of Hackney that they work together to come up with a plan for the

9    property (AR 1:1:1), Hackney dismissed Claxton's offer, saying he failed to understand how Claxton

10   could design a plan consistent with General Plan policies, even though the plain text of the General

11   Plan permitted ten-acre agricultural parcels, like those Claxton proposed. AR 1:2:2-3. What Hackney

12   really meant, and the tone of his letter makes clear, is that he opposed multiple ten-acre parcels and

13   thought they should be prohibited. Even before Claxton submitted an application, the County

14   believed that Claxton wanted "non-agricultural parcels," even though no zone change was requested.

15   Further, Hackney displayed a bias against outsiders coming into the County and buying property.

16   *See* AR 1:25:196 (explaining that ten-acre parcels are attractive to "city folk" who do not know

17   much about farming); AR 2:53:426 (discussing what happens when people from "outside" purchase

18   property). The mistaken belief that Claxton would not farm his land and the bias against "outsiders"

19   led to the County's subsequent actions in delaying the application, adopting an unlawful resolution,

20   staff's denial recommendation, and the Planning Commission's and Board's denials.

21       The instant case is also similar to *Clark v. City of Hermosa Beach*, 48 Cal. App. 4th 1152

22   (1996). In that case, the city council voted down a proposed moratorium on buildings over 30 feet,

23   which would have restricted the height of the Clarks' proposed project. The city, however,

24   effectively implemented the 30 foot height limit by denying projects over 30 feet. *Id.* at 1165. The

25   court found that the trial court properly issued a writ of administrative mandate, as the city

26   "exhibited bias in connection with its unsuccessful effort to impose a construction moratorium." *Id.*

27   at 1173. Further, the court stated that the sequence of events, in failing to adopt a moratorium and

28   then denying permits that would have fallen under the moratorium indicated that the city was

**MHA**
McDonough Holland & Allen PC
Attorneys at Law

1 attempting to do something indirectly that it could not do directly. *Id.*

2 Here, the County unlawfully delayed processing Claxton's application to give it time to do

3 something indirectly – effectively amend its General Plan to make it possible to find Claxton's

4 application inconsistent with the General Plan – that it failed to do directly, amend the General Plan.

5 In fact, the County previously considered amending its General Plan to increase the minimum parcel

6 size, but the Board of Supervisors never took such action. AR 1:25:179.

7 Claxton did not receive the fair and unbiased process he deserved and was unfairly

8 discriminated against when others seeking similar subdivisions were granted theirs. Claxton

9 deserved the same treatment as the other applicants but did not receive it. Had the County processed

10 Claxton's application when it was required to by law, it would not have delayed its completeness

11 determination and would not have had the chance to adopt Resolution Number 07-010 in the interim.

12 As one Board member stated when trying to understand the application of Resolution

13 Number 07-010 to Claxton's application, "It's very confusing and it doesn't – I have to side with Mr.

14 Claxton a little bit here. It's not fair." AR 2:53:435. For that reason, this Court should issue a writ of

15 administrative mandamus and order the County to reconsider Claxton's application using the

16 standards and policies in effect on the date Claxton's application was complete, February 9, 2007.

17 **B.     The County Committed a Prejudicial Abuse of Discretion**

18 A governing body commits an abuse of discretion if it "has not proceeded in a manner

19 required by law, its decision is not supported by findings, or the findings are not supported by

20 substantial evidence." *Sequoyah Hills Homeowners Assn. v. City of Oakland*, 23 Cal. App. 4th 704,

21 717 (1993). Here, the County abused its discretion by not proceeding in the manner required by law

22 and by adopting findings that were not supported by substantial evidence.

23 **1.     The County Did Not Comply with the Permit Streamlining Act**

24 The PSA required the County to determine if Claxton's application was complete within

25 thirty days of receipt. If the County did not make the determination, the application would have been

26 deemed complete. The PSA permitted the County to determine that the application was complete <u>but</u>

27 also to ask for additional information to "clarify, amplify, correct, or otherwise supplement the

28 information" submitted. Gov't Code § 65944(a). The County, however, determined that the



Petitioner's Opening Brief                                                                                    1206495v5 36581/0001

1  application was incomplete when, under the PSA, it should have been deemed complete.

2  On February 9, 2007 (the 30th day after receiving Claxton's application), after the Board of

3  Supervisors tabled consideration of Claxton's "poster child" of an application, Hackney informed

4  Claxton that his application was incomplete (AR 1:5:54-55) for the following reasons:

5  1.  Purported inconsistency between the text of the application and the map submitted in

6  terms of the number of lots proposed to be subdivided and the description;

7  2.  Item C on the application was "lacking in clarity, specificity, and as stated is not

8  consistent with information you had previously provided to staff at the September 26, 2006

9  meeting," specifically with respect to (a) what "long term estate planning" means; (b) how the

10  existing orchard would continue to be farmed together; (c) what the sentence "There is no plan for

11  sale of any lots at this time" means; and (d) whether Claxton had changed his plans to farm the land

12  since Hackney claims that Claxton stated he did not intend to farm the land;

13  3.  It was unclear how or why subdividing the land into mostly ten-acre parcels would

14  not cause a "[c]hange in pattern, scale or character of general area of project";

15  4.  It was unclear how or why the project would not cause problems to streams, ground

16  water quality or quantity, or alter existing drainage patterns; and

17  5.  It was unclear how or why the project would not result in a substantial change in the

18  demand for municipal services, especially for fire and sheriff services.

19  Claxton responded to Hackney's letter on February 16, explaining that the tentative map

20  correctly represented the proposed subdivision into 39 lots. Claxton answered each clarification

21  question, including explaining that "long term estate planning" means preparing for the distribution

22  and management of an estate upon a person's death. AR 1:6:56.

23  Hackney responded by letter dated March 23, 2007, finding Claxton's response "wholly

24  insufficient" and stating the application remains incomplete until receipt of the requested

25  information.  AR 1:7:58. Claxton responded by letter on April 20, 2007, asking Hackney for

26  examples as to how the project would cause the alleged impact or specifics as to why the application

27  was incomplete. AR 1:8:63. Claxton also said the application was complete upon filing and deemed

28  complete on February 9, 2007, as he provided everything required by law. AR 1:8:64. In fact,



14

1  Claxton's application was effectively complete on February 6, when Hackney asked the Board of

2  Supervisors to consider it.

3  On June 5, Hackney informed Claxton by letter that with Claxton's April 20 letter, the

4  application was *complete*. AR 1:9:65. He stated, "While there may be questions regarding the

5  application, Department staff is confident such matters may be addressed in the processing of your

6  application request." *Id*. Hackney was forced to concede the application was complete when pressed

7  to come up with specific examples explaining why the application was incomplete.

8  Hackney's June 5 letter could have, and should have, been sent on or before February 9. Each

9  issue complained of requested clarification or correction, which may be requested after the

10  application is complete. *See* § 65944(a), permitting the County to ask for information to "clarify,

11  amplify, correct, or otherwise supplement" the application. Thus, Hackney should have determined

12  Claxton's application complete by **February 9**, prior to the Board's adoption of Resolution No. 07-

13  010.

14  Had the County deemed Claxton's application complete on or before February 9, only the

15  laws and policies in effect on that date would have applied to his subdivision. Gov't Code § 66474.2.

16  On that date, his application was consistent with the General Plan and Zoning Code. The General

17  Plan designated the land as Agriculture General, which is "generally used for orchard and crop

18  production." AR 2:62:503. The land was in agricultural production.[5]  The A-G designation permits

19  the subdivision of land into 10-acre parcels, but with a caveat that "Subdivisions of farms into 10-

20  acre non-agricultural parcels should be strictly prohibited" and that "it is imperative that the zoning

21  ordinance specifies agriculture as the primary use." *Id*. Claxton's application proposed to subdivide

22  the property into 10-acre agricultural parcels, which the General Plan permitted.

23  Claxton proposed to continue using the land for agricultural purposes. Notably absent from

24  the record is any application for a change in zoning, an amendment to the General Plan, or a request

25  for any type of permit. In fact, even if Claxton wanted to build a structure on the property, the

26  Zoning Code provides that only a structure "appurtenant" to a principal agricultural use is permitted,

27  but other uses, including a single-family dwelling not "appurtenant" to a principal agricultural use,

28

---

[5] Claxton began farming the land after his father passed away in 2002, and the land is currently in agricultural production.



Petitioner's Opening Brief

1206495v5 36581/0001

1  require a use permit. AR 2:63:513. This language is similar to that in the General Plan, which states,

2  "Residences in these [A-G] areas are related to agricultural operations." AR 2:62:503. Finally, the

3  Exclusive-Agriculture (E-A) zoning was subject to a ten-acre minimum lot size with agriculture as

4  the primary use, and Claxton fell well within that zoning. AR 2:62:503.

5      As of February 9, 2007, Claxton's application was complete under the PSA and also

6  complied with both the County's General Plan and Zoning Code. However, by manipulating the

7  process, the County stalled Claxton's application to make Resolution No. 07-010 applicable to the

8  application so it could determine that his subdivision application of five or more parcels was "non-

9  agricultural" based solely on the size, not the use, of the proposed parcels. AR 2:42:343.

10     The County's determination that Claxton's application was incomplete was incorrect as a

11  matter of law under the PSA and was a sham in order to further the County's plan to deny the

12  application. Because of this prejudicial abuse of discretion, the Court should issue a writ of

13  administrative mandamus ordering the County to reconsider Claxton's application using only the

14  laws, policies, and standards in effect on February 9, 2007.

15     **2.    The County's Adoption of Resolution No. 07-010 was an Unlawful**
           **"Interpretation" of its General Plan and Effectively a General Plan Amendment**
16

17     To amend its General Plan, the County was required to comply with statutory procedures

18  (including having public hearings of both the Planning Commission and the Board of Supervisors).

19  The County generally may interpret or clarify its intention concerning the General Plan. *City of*

20  *Walnut Creek v. County of Contra Costa*, 101 Cal. App. 3d 1012, 1021 (1980). But it does not have

21  unfettered discretion to interpret it, and courts may overturn an agency's interpretation if a

22  reasonable person could not have reached the same conclusion. *Families Unafraid to Uphold Rural*

23  *El Dorado County v. County of El Dorado*, 62 Cal. App. 4th 1332, 1338 (1998) (subdivision

24  designation inconsistent with general plan  contiguous development and rural separation policies).

25     Colusa County claims that Resolution No. 07-010 did not amend the General Plan and that

26  staff only sought "clarification" from the Board on interpreting it. AR 2:53:403. Resolution No. 07-

27  010 was effectively an amendment to the General Plan, as it changed the permissible parcel sizes for

28  lands within the A-G area and "deemed" certain agricultural parcels "non-agricultural." No


**MHA**
McDonough Holland & Allen PC
Attorneys at Law

Petitioner's Opening Brief                                                    1206495v5 36581/0001

1   reasonable person could read the statement that subdivision of ten-acre non-agricultural parcels

2   means that subdivisions of five or more parcels are non-agricultural. Any reasonable person would

3   read "non-agricultural" and understand that to mean exactly what it says – something other than

4   agriculture (such as retail, commercial, industrial, residential, public building, etc.). The County

5   cannot credibly claim that this effective amendment is really an "interpretation" of its General Plan.

6   Moreover, the County has never been able to reasonably explain why there is a different

7   standard for subdivisions of four or fewer parcels versus five or more parcels. While generally a

8   parcel map is needed for the subdivision of four or fewer parcels and a tentative and final map are

9   needed for a subdivision of five or more parcels, that is a technical distinction under the Subdivision

10   Map Act. When pressed by a member of the Board of Supervisors as to why splitting property into

11   five pieces renders the use non-agricultural but splitting it into four does not, Hackney responded,

12   "Well, in four it's a parcel map capital P." AR 2:53:436. When the member pressed the issue further,

13   County Counsel Rodegerdts stated, "It becomes a subdivision simply by issue of the fact you have

14   five parcels,"[6] and "The General Plan suggests that ten-acre parcels can be agriculture," and also that

15   "it says they will remain in agriculture in perpetuity." AR 2:53:437. These statements neither made

16   sense nor answered the question. Neither the Planning Director nor the County Counsel offered any

17   plausible reason explaining why subdividing five or more parcels should be, or is, considered "non-

18   agricultural" or why that is a reasonable interpretation of the General Plan.

19   The County prejudicially abused its discretion in adopting Resolution No. 07-010 and

20   effectively amended its General Plan without following the law. This Court should issue a writ of

21   administrative mandamus ordering the County to reconsider Claxton's application without applying

22   Resolution Number 07-010.

23   **C.   The County Abused Its Discretion in Adopting Findings That Were Not Supported by Substantial Evidence**

24

25   **1.   The Requirement for Findings**

26   The agency "must set forth findings to bridge the analytic gap between the raw evidence and

27   ---

[6] This, and Hackney's statements about having a subdivision with a small "s" versus a capital "s" are
28   inconsistent with both the definition of subdivision in the SMA (Gov't Code § 66424, defining a subdivision
as the division of land, whether it be into four or fewer or five or more parcels) and the County's Zoning
Code, which defines subdivision in the same manner as the SMA. *See* Colusa County Code Appendix XIV,
§ 2.15(a), available at http://www.colusacountyclerk.com/documents/ County_Code.pdf.



Petitioner's Opening Brief                                                    1206495v5 36581/0001

1    ultimate decision or order." *Topanga Ass'n for a Scenic Community v. County of Los Angeles*, 11

2    Cal. 3d 506, 515 (1974). "[T]he key test is whether the findings apprise the parties of the basis for

3    the administrative action." *City of Walnut Creek v. County of Contra Costa*, 101 Cal. App. 3d 1012,

4    1017 (1980). The findings (a) ensure an orderly analysis by the agency, (b) permit a reviewing court

5    to trace and examine the agency's analysis, (c) allows the parties to determine whether and on what

6    basis to seek judicial review, and (d) serve a public relations function by demonstrating that

7    administrative decision-making is careful, reasoned, and equitable. *Topanga.* at 516. The court may

8    not substitute its own findings for the agency's or substitute its discretion for that of the agency's. *See*

9    *American Funeral Concepts-American Cremation Soc'y  v. Board of Funeral Directors &*

10    *Embalmers*, 136 Cal. App. 3d 303, 311 (1982). Nor may the court imply findings to support the

11    administrative decision if findings were not made. *Saad v. City of Berkeley*, 24 Cal. App. 4th 1206,

12    1214 (1994). If the Court finds that the findings are inadequate, the Court should remand the case to

13    the County to prepare adequate findings. *Usher v. County of Monterey*, 65 Cal. App. 4th 210, 212

14    (1998).

15       An abuse of discretion is established "if the court determines that the findings are not

16    supported by substantial evidence in the light of the whole record." Cal. Civ. Proc. Code § 1094.5(c).

17    The substantial evidence test requires the court to review the entire record and consider all relevant

18    evidence in it, including evidence that may detract from the evidence supporting the agency's

19    decision. *California Youth Authority v. State Personnel Bd.*, 104 Cal. App. 4th 575, 585 (2002);

20    *Young v. Gannon*, 97 Cal. App. 4th 209, 225 (2002). Substantial evidence is relevant evidence that a

21    reasonable mind might accept as adequate to support a conclusion (*California Youth Authority v.*

22    *State Personnel Bd.*, 104 Cal. App. 4th 575 (2002)) and "[e]vidence of ponderable legal significance

23    . . . reasonable in nature, credible, and of solid value." *Young v. Gannon*, 97 Cal. App. 4th 209, 225

24    (2002).

25       **2.**      **None of the County's Four Findings Were Supported by Substantial Evidence**

26       Finding A found that the subdivision is inconsistent with the General Plan's Land Use

27    Element for land designated Agriculture General. Specifically, the finding states, "Language

28    regarding the prohibition of subdividing of farms into 10-acre non-agricultural parcels applies to the



MHA
McDonough Holland & Allen PC
Attorneys at Law

18

1    project." AR 2:42:341. But, Claxton did not propose to subdivide the land into non-agricultural

2    parcels. Thus, this finding could only be based upon the impermissible General Plan amendment.

3    The County lacked substantial evidence to make this finding.

4            Finding B stated that the subdivision was not consistent with the goals and policies for the A-

5    G land use designation, specifically Land Use Policies LU-20 and LU-22, which require that land

6    designated A-G remain in agriculture. AR 2:42:341. Claxton did not propose to change the use of his

7    property from agriculture to non-agricultural, and no evidence supports a contrary conclusion.

8            Finding C is premised on the idea that the project "may impair the integrity and character of

9    the Exclusive Agricultural (E-A) zone due to the number of 10-acre parcels proposed" and may have

10   negative health, safety, and general welfare impacts. AR 2:42:341 (emphasis added). The finding

11   also stated that the project was not consistent with the E-A zone. Id. The County adopted eight sub-

12   findings, each of which discussed the "threat" of "non-farming families," including that non-farming

13   families would have excessive wait times for urban services and that there could be conflicts

14   between farming families and non-farming families. AR 2:42:342.

15           The County had no evidence, much less substantial evidence, that "non-farming" families

16   would move onto the property. Hackney even acknowledged that there was no imminent threat of

17   "non-farming" families. AR 2:53:430. This is supported by the fact that residences in A-G areas "are

18   related to agricultural operations." AR 2:62:503. The zoning also remained very restrictive, and if a

19   new use that was not appurtenant to a farming use were to be proposed, either a use permit or a zone

20   change (neither of which were sought) would be required. AR 2:63:513.

21           Finding D stated that the subdivision constituted a non-agricultural subdivision of five

22   parcels or more, consisting of parcels less than 20 acres in size. The subdivision was deemed "non-

23   agricultural" pursuant to Resolution No. 07-010 and "is not to be supported." AR 242:343. But

24   Claxton's subdivision would have resulted in five or more agricultural parcels of 20-acres or less.

25   Finding D was based solely on Resolution No. 07-010, which was an effective and unlawful General

26   Plan amendment. The County unlawfully adopted Resolution No. 07-010 and unlawfully denied

27   Claxton's application based on an unsubstantiated conclusion that the division of five or more

28   parcels turns property zoned and used for agriculture into "non-agricultural" properties.



1    Each finding was based on an unsubstantiated assumption about "non-agricultural" parcels.

2    The County had <u>no evidence</u> for its findings and no reasonable basis to conclude the subdivision

3    would result in a non-agricultural use. The evidence the Board had was Claxton's statements that his

4    property would remain in agricultural production. *See* AR 1:3:5 ("proposed use of resulting parcels

5    is to remain agriculture"); AR 1:3:8 ("The existing orchard will continue to be farmed together");

6    AR 2:50:376 ("The long-term plan for the subject property is to replant the low-production older

7    orchards, to install drip irrigation for the new plantings, and to increase processing capacity."). The

8    Board was required to make findings with "a reasonable basis in fact, not in fancy." *Arnel*

9    *Development Co. v. City of Costa Mesa*, 126 Cal. App. 3d 330, 339 (1981). It did not.

10    ## VIII.  CONCLUSION

11    Colusa County previously approved many ten-acre subdivisions. Upon receiving an out-of-

12    towner's application, the County suddenly considered the appropriateness of ten-acre parcels. When

13    the Board of Supervisors did not immediately act on the issue, the County determined Claxton's

14    application incomplete, buying itself time to adopt a resolution rendering Claxton's application

15    inconsistent with the General Plan. Claxton did not propose development and stated the land would

16    be farmed together. Even if Claxton wanted to have a "non-agricultural" use, the County's General

17    Plan and Zoning Code severely limited the permissible uses, only allowing uses appurtenant to

18    agricultural uses. The County's bias towards Claxton resulted in an unfair hearing, and it

19    prejudicially abused its discretion in proceeding in a manner not required by law. Claxton

20    respectfully requests the Court issue a writ of administrative mandamus pursuant to Code of Civil

21    Procedure section 1094.5 and order the County to reconsider Claxton's application using the laws,

22    policies, and regulations in effect on February 9, 2007, the day Claxton's application was complete.

23    DATED: July 31, 2009

24    McDONOUGH HOLLAND & ALLEN PC
       Attorneys at Law

25

26

27    By:_____/s/_____Kara K. Ueda_____
                  KARA K. UEDA

28    Attorneys for Petitioner/Plaintiff, Daniel D. Claxton

Petitioner's Opening Brief                                                                1206495v5 36581/0001

CASE TITLE:      ***Claxton v. County of Colusa, et al.***
COURT/CASE NO:   Colusa County Superior Court No. CV 23572

## PROOF OF SERVICE

I am employed in the County of Sacramento; my business address is 555 Capitol Mall, 9th Floor, Sacramento, California 95814.  I am over the age of eighteen years and not a party to the foregoing action.  I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On July 31, 2009, I served the within:

### PETITIONER'S OPENING BRIEF

☐ **by mail** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013a(3), by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below.  At McDonough Holland & Allen PC, mail placed in that designated area is given the correct amount of postage and is deposited that same day, in the ordinary course of business, in a United States mailbox in the City of Sacramento, California.

☐ **by personally delivering** a true copy thereof, in accordance with Code of Civil Procedure § 1011, to the person(s) and at the address(es) set forth below.

☐ **by overnight delivery** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013(c), by placing a true copy thereof enclosed in a sealed envelope, with delivery fees paid or provided for, and delivering that envelope to an overnight express service carrier as defined in Code of Civil Procedure § 1013(c)..

☒ **by electronic transmission**, in accordance with the e-filing and e-service procedures of the U.S. District Court, Eastern District of California.

Martha Stringer
Williams and Associates
1250 Sutterville Road #290
Sacramento, CA 95822
Ph: (916) 456-1122
Fx: (916) 737-1126
E:  mstringer@WilliamsLegal.net

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on July 31, 2009.

/s/   Jan Hougland
JAN HOUGLAND



Proof of Service

1

1091807v1 36581/0001