UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DANIEL D. CLAXTON,<br><br>      Petitioner/<br>      Plaintiff,<br><br>  v.<br><br>COUNTY OF COLUSA; the BOARD OF SUPERVISORS OF THE COUNTY OF COLUSA; STEPHEN HACKNEY in his official capacity; and DOES 1-100, inclusive<br><br>      Respondents/<br>      Defendants. | No. 2:08-cv-01058-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

Through these proceedings, Petitioner/Plaintiff Daniel D. Claxton ("Claxton" or "Plaintiff") challenges Colusa County's refusal to permit his proposed subdivision of farmland into smaller parcels. Plaintiff's lawsuit was initially filed in Colusa County on April 5, 2008. Because the lawsuit contains causes of action alleging that Plaintiff's equal protection and due process rights were violated in contravention of 42 U.S.C. § 1983, it was removed here under federal question jurisdiction.

1

Given the likelihood that determination of Plaintiff's Petition for Writ of Mandate under California Code of Civil Procedure § 1094.5 would resolve the remainder of the lawsuit, the case was subsequently bifurcated so that the writ petition could be adjudicated first. As set forth below, Plaintiff's Petition for Writ of Mandate will be granted.

**BACKGROUND**

Plaintiff, a San Diego County resident, has been managing Colusa County farmland (near Arbuckle, California) on behalf of the Claxton Family Trust since his father died in 2002. On or about January 10, 2007, Plaintiff filed a Tentative Subdivision Map Application with Defendant Colusa County ("Colusa County" or "County") requesting that a total of 421.51 acres of orchard farmland (planted in almonds) be split into 39 smaller increments consisting of 35 parcels of about ten acres, two parcels approximately 12 acres in size, one parcel about 16 acres, and one of approximately 26 acres. AR 1:3:4-52.[1]

The Colusa County General Plan ("Plan") designated the Claxton property as Agricultural General ("A-G") and zoned the property "Exclusive Agriculture."

///
///
///

---

[1] The term "AR" refers to the Administrative Record lodged with the Court on May 29, 2009. The numbers following "AR" refer to the volume, tab, and page number of the Administrative Record.

1 Plaintiff claimed that the property for which subdivision was
2 sought, which currently was divided into 20 and 40-acre parcels,
3 was amenable to being further split into parcels as little as 10
4 acres in size based on the language of the Plan.  The Plan
5 allowed for 10-acre parcels in A-G zones, as long as the property
6 remained agricultural, stating in pertinent part as follows:

> The A-G areas are presently zoned "Exclusive
> Agriculture" and are subject to a 10-acre minimum lot
> size requirement.  The lot size requirement alone is
> not enough to prevent the conversion of A-G land from
> farming to very low density residential uses.  For
> instance, 10-acre country homesites are highly
> marketable in Colusa County, particularly in the
> orchard areas where foliage is dense.  In addition to
> the minimum lot size requirement, it is imperative that
> the zoning ordinance specifies agriculture as the
> primary use of these properties.  Subdivision of farms
> into 10-acre non-agricultural parcels should be
> strictly prohibited.

14 AR 2:62:503.

15   Under the Permit Streamlining Act (Cal. Govt. Code
16 § 65943(a)), Colusa County had 30 days following its receipt of
17 Claxton's application to determine whether it was complete.  On
18 February 9, 2007, within the requisite 30-day period, the County
19 advised Claxton that his application was incomplete.  AR 1:5:54-
20 55.  Stephen Hackney, Director of the Planning and Building
21 Commission, pointed to several shortcomings, including variances
22 between the application itself and the attached map, questions
23 pertaining to how Claxton proposed to keep the property
24 agricultural, and questions pertaining to how municipal services
25 would be impacted.  Id.
26 ///
27 ///
28 ///

3

By letter dated February 16, 2007, Claxton responded to Stephen Hackney's concerns, indicating, <u>inter alia</u>, 1) that the Tentative Subdivision Map (as opposed to the Application itself) correctly represented the proposed project; 2) that the subdivision proposal was consistent with current zoning; 3) that he intended to continue to farm the property for the foreseeable future; 4) that in the area of the proposed subdivision other 10-acre agricultural parcels had been created, and 5) that there was no reason to treat his request any differently than those other 10-acre parcels, some of which actually adjoined his property. AR 1:6:56-57.

Despite this response, on February 20, 2007, while Plaintiff's Application still remained incomplete according to the County, the Colusa County Board of Supervisors passed Resolution 07-010, which provides in pertinent part that

> 1. Subdivision (Final) Map applications consisting of five (5) or more parcels, with parcels less than twenty (20)-acres in size, are determined to be and are affirmed as being "non-agricultural parcels"; and
>
> 2. Subdivision (Final) Map applications consisting of "non-agricultural parcels" are inconsistent with the County's General Plan, the purposes and intent of the Agriculture-General land use designation, and of the goals and policies of the General Plan; and
>
> 3. The Board of Supervisors, in protecting agricultural resources in the County, is not supportive of Subdivision (Final) Map applications consisting of 5-parcels or more, less than 20-acres in size, in areas with an Agriculture-General land use designation...

Subdivisions of four parcels or less were excluded from this designation.  AR 1:7:61-62.

///

4

By passing Resolution 07-010 at a point when Claxton's application was still considered incomplete, Colusa County was able to apply the Resolution to the application. Consequently, when Claxton's Application did ultimately come before the Planning Commission on September 10, 2007, Resolution 07-010 was cited in the County's Staff Report (AR 1:17:97-102) as justifying denial of the project. The Staff Report also opines that a large subdivision like that proposed by Claxton could impair the integrity of the Exclusive Agriculture zone, by resulting in extensive residential uses that may conflict with farming and cause tension between those actually farming the land and those simply desiring to live in the area. Id.

The Planning Commission accepted the Staff Report's recommendation and rejected Claxton's Application on a 5-0 vote. AR 1:25:197. Claxton's appeal before the full Board of Supervisors was also rejected on January 22, 2008. AR 2:53:442-443. As stated above, the instant lawsuit was thereafter filed in May of 2008.

**STANDARD**

A writ of administrative mandamus is available following an agency's final action, where the decision results from a proceeding in which by law a hearing is required to be given and evidence taken, and the agency is vested with discretion in the determination of the facts. Cal. Code Civ. P. § 1094.5; Conlan v. Bonta, 102 Cal. App. 4th 745, 752 (2002).

///

5

On administrative mandamus, the court must consider 1) whether the respondent acted in excess of jurisdiction; 2) whether there was a fair trial; or 3) whether there was a prejudicial abuse of discretion. Cal. Code Civ. P. 1094.5(b). An abuse of discretion occurs if the respondent "has not proceeded in a manner required by law, its decision is not supported by findings, or the findings are not supported by substantial evidence. <u>Sequoyah Hills Homeowners Assn. v. City of Oakland</u>, 23 Cal. App. 4th 704, 717 (1993).

Consideration of a subdivision map is properly reviewable by a petition for writ of administrative mandate. <u>Horn v. County of Ventura</u>, 24 Cal. 3d 605, 614 (1979).

**ANALYSIS**

Claxton claims he is entitled to administrative mandamus in this case because he was denied a fair dealing inasmuch as his application was denied, while the County approved 10-acre parcels for other applicants. He further claims that the County abused its discretion by inappropriately determining that his application was incomplete, when it should have been deemed complete. Claxton additionally argues that the County's adoption of Resolution 07-010 was also an abuse of discretion since the Resolution in effect constituted an impermissible amendment of the General Plan, as opposed to an acceptable interpretation or clarification. Finally, Claxton argues that the County's findings in denying his application were also an abuse of discretion, since they were not supported by substantial evidence.

Claxton claims that there was no evidence upon which the County could have determined that his proposed subdivision was for non-agricultural issue, since he indicated he intended to continue farming the property, at least for the foreseeable future.

The County's case largely hinges on whether Resolution 07-0100 was valid and could properly be applied to Plaintiff's subdivision request. The County argues that the Resolution was appropriate as clarifying a potential ambiguity in the General Plan with regard to agricultural subdivision. See Opp., 12:22-25 ("the language of the General Plan....was not perhaps as clear as it could have been regarding the County's intent with respect to division of agricultural land"). It is true that the County can generally interpret or clarify matters concerning the General Plan. City of Walnut Creek v. County of Contra Costa, 101 Cal. App. 3d 1012, 1021 (1980). Here, however, the pertinent Plan language states unequivocally that agriculturally zoned property is "subject to a 10-acre minimum lot size requirement." The plan just as unequivocally states that "subdivision of farms into 10-acre non-agricultural parcels should be strictly prohibited". It does not say that a subdivision of five or more parcels less than 20 acres in size will be deemed agricultural. Yet the County's Resolution 07-010 did just that.

///
///
///
///
///
///

7

1     Although the Plan does express generalized concern about
2  conversion of agricultural land from farming to low-density
3  residential use, that concern is summed up in the Plan simply by
4  an admonition that zoning laws specify agriculture as the primary
5  use of subdivided farm property, and, as stated above, that
6  subdivision into 10-acre non-agricultural parcels be "strictly
7  prohibited".  Resolution 07-010, on the other hand, changed both
8  the permissible parcel sizes for A-G designated lands (from 10 to
9  20 acres) and "deemed" certain agriculturally zoned parcels "non-
10 agricultural" (by treating subdivision applications of more than
11 five parcels, with parcels less than 20 acres in size, as
12 automatically non-agricultural).
13    The Court agrees with Plaintiff that this is a fundamental
14 change, not a clarification, and as such must be effectuated by
15 an Amendment to the General Plan, rather than a Resolution whose
16 permissible scope is limited to interpretation or clarification.
17 Significantly, any amendment to a general plan is subject to the
18 provisions of California Government Code § 65350, et seq., which
19 requires certain procedures not followed here.  The Planning
20 Commission, for example, must hold at least one noticed public
21 hearing and make a written recommendation to the Board of
22 Supervisors before a plan amendment can be effectuated.  Cal.
23 Gov't Code § 65353(a), 65354.   It is undisputed that these
24 prerequisites were not satisfied before the Board of Supervisors'
25 "Resolution" was enacted.
26 ///
27 ///
28 ///

8

As such, because the proposed resolution did in fact amount to an amendment, the Board of Supervisors acted in excess of its jurisdiction in adopting it without following statutorily prescribed procedures. Consequently, Resolution 07-010 was improper.

Although the County argues that Plaintiff's Application was not consistent with the intent of the Plan's "exclusive agriculture" zoning because of the number of subdivided parcels being proposed, and while it claims that previously approved subdivisions had entailed far fewer proposed parcels, that does not make the proposed change any less of a fundamental plan amendment with its attendant procedural safeguards.

Additionally, even if the Resolution were deemed proper, which this Court has determined it is not, in order to apply to Plaintiff's project it had to be in effect at the time Plaintiff's Application was complete in any event. Cal. Gov't Code § 66474.2(a). Resolution 07-010 was passed on February 20, 2007, well over a month after Claxton's Application was submitted on or about January 10, 2007. Although the County deemed the Application "incomplete" at all times prior to passage of Resolution 07-010, this Court finds that characterization misplaced.

First, although Mr. Hackney pointed to variances between the Application itself and the attached subdivision map, that discrepancy, which amounted to a typographical error, should have been resolved by a correction request under California Government Code § 65944(a) rather than a determination that the Application was incomplete.

9

With regard to the proposed use of the property to be subdivided, the Application itself made it clear that Claxton intended to continue to farm the property, and had no plans for sale of any lots. AR 1:3:8. Claxton's February 16, 2006 response to the County's February 9, 2007 Letter of Incompleteness (AR 1:6:56-57) reiterated Claxton's intent to farm the property for the foreseeable future, and further reiterated that the proposed subdivision was consistent with current zoning requirements. The County accordingly acted in excess of its jurisdiction in finding the Claxton Application incomplete on February 9, 2007. That finding negates any impact of the Board's February 20, 2007 Resolution even had the Resolution been validly adopted.

The Court also rejects the propriety of the County's treatment of Plaintiff's Application differently than other proposed subdivision requests that had previously been approved. The record shows that the County approved numerous subdivisions involving agriculturally zoned land into parcels less than 20 acres in size. See, e.g., AR 1:24-178-79 (Planning Commission approval of divisions into three 11.5 acre parcels); AR 1:3:17 (depicting smaller parcels adjacent to Plaintiff's property); AR 1:22:134 (September 6, 2007 letter from the Colusa County Resource Conservation District expressing generalized concern about the "large volume of ten acre parcels splits being approved for [agriculturally zoned property]"). The reasons advanced for the differing treatment accorded Claxton's Application are not supported by substantial evidence.

///

///

10

1      The County's Staff Report, which the Board of Supervisors
2 adopted in rejecting Plaintiff's Application, opined that the
3 number of 10-acre parcels proposed "may" impair the integrity and
4 character of the exclusive agriculture zone, and "may have
5 negative impacts on the health, safety, and general welfare",
6 thereby making the proposed subdivision allegedly inconsistent
7 with an agricultural zone designation.  AR 1:17:100.   Those
8 hypothetical effects, however, are at odds with the information
9 provided by Claxton in his application to the effect that he
10 intended to continue farming the property together, had no plans
11 to sell any of the parcels, and was requesting subdivision only
12 for estate planning purposes.  AR 1:3:8.  In the face of those
13 representations, and the fact that Claxton's proposed use was
14 consistent with existing zoning standards, the County's arguments
15 are grounded not on any substantial facts or evidence but rather
16 upon unsupported speculation.  As such, it was an abuse of
17 discretion for the County to treat Plaintiff's Application any
18 differently than other subdivision applications that had been
19 approved.  Courts "may properly inquire as to whether a scheme of
20 classification [involving land use zoning] has been applied
21 fairly and impartially in each instance."  Arnel Development Co.
22 v. City of Costa Mesa, 126 Cal. App. 3d 330, 336 (1981) (quoting
23 Wilkins v. City of San Bernardino, 29 Cal. 2d 332, 338 (1946)).
24 ///
25 ///
26 ///
27 ///
28 ///

The County's processing of Claxton's Application cannot pass muster as fair and impartial under the circumstances present here, where his Application was treated differently than others, based on speculation not supported by the record, and where the Board of Supervisors passed an invalid Resolution whose timing and content appears inescapably aimed at defeat of Plaintiff's specific subdivision request.  The Writ of Mandate must therefore be granted.

The County's final procedural argument in opposition to Plaintiff's writ request fares no better than its previous arguments as delineated above.  In short, citing California Government Code § 65009(c)(1)(A), the County contends that Plaintiff had only 90 days after the resolution was adopted on or about February 20, 2007 to attack, review, set aside, void or annul the decision and failed to take the requisite action during that 90-day period.  The County's argument is misplaced because § 65009's 90-day post-adoption limitation period is inapplicable where the challenge, as here, is to the application of the resolution to a particular piece of property.   Because the challenge is as to the County's enforcement of the resolution against a particular subdivision application, the applicable 90-day limitation period is not § 65009(c)(1)(A), but rather § 66499.37, which does not begin to run until the date of the final decision on the subdivision application at issue.  See Hensler v. City of Glendale, 8 Cal. 4th 1, 22 (1994) (90-day limitation period for challenges to the application of a land use regulation to a specific property is contained within § 66499.37, and runs from "the final adjudicatory administrative decision").

12

Here that final adjudicatory decision did not occur until January 22, 2008, when the full Board of Supervisors rejected Claxton's appeal of the Planning Commission's decision. The present lawsuit was initiated less than 90 days later, on April 5, 2008. Consequently, it was timely under § 66499.37.

**CONCLUSION**

For all the foregoing reasons, the Court GRANTS Plaintiff's Petition for Writ of Mandate pursuant to California Code of Civil Procedure § 1094.5. Colusa County is directed to reconsider Plaintiff's Application using the laws, policies and regulations in effect prior to February 20, 2007.

IT IS SO ORDERED.

Dated: January 15, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

13